## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TIMOTHY L. JUNO,**<br>**1123 Custer Ave.**<br>**Kansas City, Kansas  66104**<br><br>　　　**Plaintiff,**<br><br>**v.**<br><br>**THE BURLINGTON NORTHERN &**<br>**SANTA FE RAILWAY COMPANY,**<br>　　　<u>**Serve:**</u><br>　　　**The Corporation Company**<br>　　　**112 SW 7th St., Suite 3C**<br>　　　**Topeka, Kansas 66603**<br><br>　　　**Defendant.** | )<br>)<br>)<br>)<br>)<br>)  **Case No.:** <u>11-CV-2153 CM/DJW</u><br>)<br>)  **Jury Trial Requested**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT FOR DAMAGES FOR DISABILITY DISCRIMINATION, HARASSMENT & RETALIATION

COMES NOW Plaintiff Timothy L. Juno ("Mr. Juno" or "Plaintiff") and for his Complaint against Defendant The Burlington Northern & Santa Fe Railway Company ("BNSF" or "Company" or "Defendant") states and alleges:

### THE PARTIES

1.　　　Mr. Juno resides at 1123 Custer Ave., Kansas City, Kansas 66104.  He has been a BNSF employee since 1976.  During that time, he has held many employment positions with the company ranging from laborer to clerical.

2.　　　Mr. Juno currently works as an Off-In-Force Reduction ("OIFR") employee for BNSF.  As an OIFR, Mr. Juno is assigned various jobs within the Company based on seniority and availability.  There are three shifts that are available during the workday.

{164573.DOCX }

3.      BNSF is a Delaware corporation operating a rail center and has offices in the Argentine area of Kansas City, Kansas.  BNSF employed at least 38,000 employees for twenty weeks in 2009.

4.      At all times relevant to this Complaint, BNSF served as Plaintiff's employer and Plaintiff was a full-time employee.

5.      BNSF is a covered entity under §101(2) of the Americans with Disabilities Act of 1990 ("ADA").

6.      Mr. Juno is 55 years-old.  He has had epilepsy since he was eight.  BNSF has known that Mr. Juno has epilepsy for over thirty years.

7.      Epilepsy is a covered disability under the ADA.  At all times relevant hereto, Mr. Juno was a qualified individual under the ADA who could perform all of the essential functions of an OIFR.

8.      At all times relevant hereto, BNSF had a collective bargaining agreement with the Transportation Communications International Union ("TCIU").   Upon information and belief, the collective bargaining agreement contains a procedure for filing employee grievances against BNSF that includes the right to an "Unjust Treatment" hearing.

9.      At all times relevant hereto, Mr. Juno was a member of the TCIU.

## JURSIDICTION AND VENUE

10.     Mr. Juno brought this action against BNSF pursuant to the ADA after BNSF discriminated against him because of his epilepsy condition and by failing to provide him with a reasonable accommodation.  This suit also includes a claim for retaliation after BNSF took adverse action against Mr. Juno after he filed internal complaints regarding BNSF's denial of his request for a reasonable accommodation and, after he tried to enforce his rights under the TCIU collective bargaining agreement.

{164573.DOCX }

11.     This lawsuit is also brought pursuant to the Kansas Act Against Discrimination ("KAAD") for the reasons cited above.

12.     This Court has subject matter jurisdiction over the state law claims by virtue of this Court's supplemental jurisdiction under 28 U.S.C. § 1367.  The state law claims form part of the same case or controversy under Article III of the Constitution and derive from a common nucleus of operative facts, such that they are expected to be tried in one judicial proceeding.

13.     Original jurisdiction lies herein pursuant to 28 U.S.C. § 1331.

14.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because BNSF does business in this District and a substantial part of the unlawful conduct giving rise to Plaintiff's claims occurred in this District.

15.     Mr. Juno filed his initial "Charge of Discrimination" ("Charge") in a timely manner with the Equal Employment Opportunity Commission ("EEOC") on or about April 20, 2010, and with the Kansas Human Rights Commission ("KHRC") on or about May 17, 2010 based upon his disability discrimination and retaliation claims.

16.     The matter was assigned EEOC Charge number 563-2010-01122 (A copy of the EEOC Charge is attached hereto as **Exhibit A)**

17.     The EEOC terminated its processing of Mr. Juno's Charge and issued Mr. Juno his "Right to Sue" letter ("RTS") against BNSF dated December 22, 2010.  This lawsuit is brought within ninety (90) days of the date of the EEOC letter. (A copy of the RTS is attached as **Exhibit B).**

18.      Under the statutes cited infra, all requisite conditions precedent have been met regarding Mr. Juno's claims.

## GENERAL ALLEGATIONS

{164573.DOCX }

20.     In 2009, an OIFR, BNSF required Mr. Juno to cover job vacancies for other BNSF employees.  The jobs he covered included clerical positions and crew hauling positions in the clerical craft.

21.     On or about July 14, 2009, Mr. Juno had a grand mal seizure while he was driving a van on Speaker Road in Kansas City, Kansas.

22.     Mr. Juno's van made minimal contact with an unoccupied semi that was parked ("accident").  There was no property damage to the van or the semi and Mr. Juno did not sustain any injuries.

23.     After the accident, Mr. Juno was taken by ambulance to KU Medical Center in Kansas City, Kansas where he was treated and released that evening.

24.     Since 2006, Mr. Juno has been under the care of Kansas City neurologist, Dr. Karin Olds, for epilepsy.  His epilepsy was well-controlled as long as he was able to take his medications as prescribed and his sleep-wake cycles were maintained.

25.     When the accident occurred, Mr. Juno was going through a stressful period in his life due to his divorce.

26.     After Mr. Juno had the seizure in July, 2009, Dr. Olds advised Mr. Juno that he could return to work, but that he should refrain from driving until he was seizure-free for six months.

27.     Despite the fact that Mr. Juno was able to return to work after the accident and seizure, BNSF placed Mr. Juno on medical leave beginning July 16, 2009.

28.     On or about July 24, 2009, BNSF advised Mr. Juno that the BNSF Medical and Environmental Department instituted an activity restriction, forbidding Mr. Juno from operating a vehicle, machinery or engaging in "safety sensitive" work for one year.

{164573.DOCX }

29.     Despite the fact that BNSF has three physicians and over 30 individuals on staff in the Medical and Environmental Department, none of these individuals examined Mr. Juno or consulted with Dr. Olds before instituting the arbitrary activity restriction.

30.     To date, none of the BSNF physicians or Medical and Environmental Department staff have examined Mr. Juno or consulted with Dr. Olds about Mr. Juno.

31.     On or about July 27, 2009, BNSF advised Mr. Juno that his medical leave would be extended through July 31, 2010.  BNSF unilaterally made the year-long extension due to the arbitrary activity restriction instituted by the Medical and Environmental Department.  BNSF also failed to provide Mr. Juno with a reasonable accommodation.

32.     On or about August 28, 2009, Mr. Juno sent an e-mail to BNSF Chief Executive Officer, Matthew Rose, requesting that he be put back to work since there was no medical basis for Mr. Juno to be off work.

33.     On or about August 31, 2009, BNSF rescinded Mr. Juno's leave of absence.  He was returned to "active status" and shown as "available" as an OIFR.

34.      The arbitrary activity restriction prohibiting Mr. Juno from operating a vehicle, machinery or engaging in "safety sensitive" work for one year remained effective and intact.

35.     When Mr. Juno returned to work after medical leave, BNSF failed to provide Mr. Juno with job assignments on a regular basis.

36.     The way that OIFR job assignments work is that OIFR employees are put on a list based on their seniority.  When a position becomes available, the OIFR employee with the most seniority gets a call for the job.  If that employee does not take the job, cannot be reached, or is not able to do the job, that employee is marked off the list for 24 hours and is excluded from any other jobs that become available within the 24 hour period.

37.     When Mr. Juno returned to work from medical leave, he asked BNSF to only call him for non-driving jobs until BNSF's activity restriction expired. The reason Mr. Juno made this request was to avoid being marked off the list for 24 hours every time he was called for a driving job. BNSF refused.

38.     In fact, whenever Mr. Juno's name came up on the OIRF list and the job entailed driving, BNSF would not allow him to accept the job and his name was marked off of the OIRF list for 24 hours. A job assignment could last for several days. The practical effect of this discriminatory practice was that Mr. Juno was denied the opportunity to accept jobs that he could have performed.

39.     Mr. Juno wanted to work and made numerous requests for job assignments to numerous BNSF employees.

40.     On August 12, 2009, BNSF offered Mr. Juno a job assignment in Topeka, Kansas. At the time, Mr. Juno resided in Liberty, Missouri. Topeka is approximately 80 miles from Liberty. Mr. Juno was still under Dr. Old's six month driving restriction. For obvious reasons, BNSF knew Mr. Juno could not accept the Topeka position.

41.     On November 16, 2009, BNSF offered Mr. Juno the Topeka job assignment a second time. Mr. Juno declined, but asked if he could take a position in the Kansas City, Kansas BNSF office. That request was denied

42.     Mr. Juno asked BNSF to offer him some clerical training so he could perform more clerical job assignments. At most, the clerical training would have taken a week. BNSF refused.

43.     Due to BNSF's refusal to keep Mr. Juno on the board for non-driving jobs, Mr. Juno was denied the opportunity to accept job assignments on the following dates including, but not limited to: September 3, 2009; September 10, 2009; September 11, 2009; September 16,

{164573.DOCX }

2009; September 23, 2009; October 21, 2009; November 4, 2009; November 5, 2009; November 6, 2009; November 10, 2009; November 12, 2009; November 13, 2009; November 21, 2009; December 4, 2009; December 5, 2009; December 6, 2009; December 7, 2009; December 10, 2009; December 16, 2009; December 20, 2009; December 21, 2009; December 22, 2009; December 23, 2009; December 24, 2009; December 27, 2009; February 19, 2010; March 11, 2010; March 25, 2010; March 31, 2010; April 19, 2010; May 14, 2010; May 28, 2010; June 28, 2010; June 29, 2010; June 30, 2010 and July 1, 2010.

44.     On or about December 30, 2009, Mr. Juno requested an "Unjust Treatment" hearing pursuant to the TCIU collective bargaining agreement.

45.     On or about January 4, 2010, BNSF denied Mr. Juno's request for an "Unjust Treatment" hearing.

46.     On or about January 8, 2010, Mr. Juno made a written request to BNSF that BNSF refrain from calling him for driving jobs.  Again, the reason Mr. Juno made this request was to avoid being marked off the list for 24 hours every time he was called for a driving job.

47.     On or about January 11, 2010, Mr. Juno asked BNSF to reconsider his request for an "Unjust Treatment" hearing.

48.     On or about January 14, 2010, BNSF reaffirmed its prior denial of an "Unjust Treatment" hearing.

49.     In the medical opinion of Dr. Olds, Mr. Juno could resume driving on January 16, 2010.

50.     On or about January 17, 2010, Mr. Juno again requested that BNSF schedule an "Unjust Treatment" hearing.

51.     On or about January 19, 2010, BNSF declined to schedule an "Unjust Treatment" hearing.

{164573.DOCX }

52.     On or about January 26, 2010, BNSF also denied Mr. Juno's request to only call his name for non-driving job assignments.

53.     BNSF refused to follow Dr. Old's recommendation of allowing Mr. Juno to drive as early as January 16, 2010.

54.     Upon information and belief, BNSF has made accommodations for four Kansas City area BNSF employees who suffer from cardiac conditions, and such accommodations are substantially similar to Mr. Juno's request for accommodations.

## COUNT I – DISABILITY DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF THE ADA & THE KAAD FOR FAILURE TO ACCOMMODATE

55.     Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 54 as if fully set forth herein.

56.     The acts described above constitute disability discrimination and harassment in violation of the ADA.

57.     Mr. Juno suffers from epilepsy which is a physical impairment that substantially limits major life activities, including working.

58.     Mr. Juno was a qualified individual under the ADA who could perform all of the essential functions of an OIFR.

59.     Mr. Juno made numerous reasonable requests to BNSF for an accommodation in the form of either shortening the driving restriction to the six month period recommended by his neurologist, Dr. Olds, and/or not calling his name for driving jobs.

60.     The act of requesting an accommodation is a protected activity under the ADA.

61.     BNSF knew or should have known that Mr. Juno's physical impairment of epilepsy limited his ability to perform his job because he could not drive for six months after he had the seizure on or about July 14, 2009.

{164573.DOCX }

62.     After it became known to BNSF that Mr. Juno had an impairment that caused a limitation, BNF had a duty to provide Mr. Juno with a reasonable accommodation.

63.     BNSF failed to seriously consider any reasonable accommodations after the limitation became known to BNSF.  This amounts to intentional discrimination, particularly when other BNSF employees are receiving the same types of accommodations Mr. Juno requested.

64.     There is a casual connection between the protected activity of Mr. Juno requesting an accommodation and the numerous adverse and damaging employment actions that BNSF engaged in and took against Mr. Juno.

65.     The act of imposing arbitrary restrictions that prevented Mr. Juno from working constitutes malice or reckless indifference to the federally protected rights of Mr. Juno.

WHEREFORE Plaintiff prays for judgment against Defendant BNSF on Count I of his Complaint, for a finding that he has been subjected to unlawful disability discrimination and harassment prohibited by 42 U.S.C. 12112(b); for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount (at least five (5) years); for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' and expert fees and expenses and for such other and further relief the Court deems just and proper.

### COUNT II – DISABILITY DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF THE ADA AND THE KAAD BASED ON PLAINTIFF'S STATUS AS AN EPILEPTIC

66.     Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 65 as if fully set forth herein.

67.     The acts described above constitute disability discrimination and harassment in violation of the ADA.

68.     Mr. Juno suffers from epilepsy which is a physical impairment that substantially limits major life activities including working.

69.     Mr. Juno was a qualified individual under the ADA who could perform all of the essential functions of his OIFR position.  His epilepsy, however, created some limitations for him because he could not drive for six months after his seizure on or about July 14, 2009.

70.     BNSF knew or should have known that Mr. Juno's limitation due to his epilepsy impeded his job performance.

71.     BNSF violated the ADA by failing to take steps to seriously consider a reasonable accommodation and reasonably accommodate Mr. Juno.   Instead, BNSF took adverse and damaging employment actions against Mr. Juno by imposing a year-long driving restriction that prevented Mr. Juno from working.  This discrimination against him was based solely on his status as an epileptic in violation of 42 U.S.C. § 12112(a).

72.     The act of imposing an arbitrary year-long driving restriction that prevented Mr. Juno from working based on a myth, fear or stereotype rather than Mr. Juno's actual ability to drive constitutes malice or reckless indifference to the federally protected rights of Mr. Juno.

WHEREFORE Plaintiff prays for judgment against Defendant BNSF on Count II of his Complaint, for a finding that he has been subjected to unlawful disability discrimination and harassment prohibited by 42 U.S.C. 12112(a); for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount (at least five (5) years); for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' and expert fees and expenses and for such other and further relief the Court deems just and proper.

### COUNT III – RETALIATION

73.     Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 72 as if fully set forth herein.

74.     The acts described above constitute retaliation in violation of the ADA.

75.     Mr. Juno requested a reasonable accommodation in the form of shortening the year-long driving restriction imposed by BNSF.  When BNSF refused, he requested another reasonable accommodation of having his name remain on the OIFR list until a non-driving position presented.  When his accommodation requests were refused, he requested an "Unjust Treatment" hearing.

76.     The act of requesting an accommodation and an "Unjust Treatment" hearing based on the denial of a reasonable accommodation is a protected activity under the ADA.

77.     BNSF retaliated against Mr. Juno early on after he made his requests for an accommodation by not seriously considering his requests and making job offers to Mr. Juno for out-of-town positions that BNSF knew he could not accept.

78.     There is a causal connection between Mr. Juno's protected activity of making accommodation requests and BNSF's adverse employment action of denying Mr. Juno's requests, thereby depriving him of his ability to earn a living.

WHEREFORE Plaintiff prays for judgment against Defendant BNSF on Count III of his Complaint, for a finding that he has been subjected to unlawful disability discrimination and harassment prohibited by 42 U.S.C. 12112(a); for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount (at least five (5) years); for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' and expert fees and expenses and for such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff  requests a trial by jury on all issues triable by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place for trial.

Respectfully submitted,

WILLIAMS LAW LLC

\S:\ Michael A. Williams
Michael A. Williams   KS Bar No. 19124
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamslawllc.com
(o) 816-876-2600
(f)  816-221-8763

Attorney for Plaintiff

{164573.DOCX }